**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| TYLER D. J.,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:24-cv-00502-REP<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending is Plaintiff Tyler D. J.'s Complaint (Dkt. 1), appealing the Social Security Administration's denial of his disability claim. This action is brought pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Having carefully considered the record and otherwise being fully advised, the undersigned enters the following Memorandum Decision and Order.

## I. LEGAL STANDARD

Under 42 U.S.C. § 405(g), the Court may set aside the Commissioner's denial of Social Security benefits if the Administrative Law Judge's ("ALJ") findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019) (internal citations omitted). If the evidence would reasonably support affirming the ALJ's decision, or reversing it, the Court may not substitute its own judgment for the ALJ's. *Ferguson v. O'Malley,* 95 F.4th 1194, 1199 (9th Cir. 2024).

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision

of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.* The Court may determine the ALJ's reasoning by drawing reasonable inferences and determining an implied finding from the record. *Ferguson*, 95 F. 4th at 1200.

## II. DISCUSSION

The Court first summarizes the ALJ's sequential process analysis. Plaintiff was initially found disabled on March 23, 2017, with an onset date of October 1, 2016. AR 17. Plaintiff's disability was continued on April 5, 2019. *Id.* The Social Security Administration subsequently determined that Plaintiff's disability ended on January 23, 2023; an Administrative Law Judge ("ALJ") then rendered an unfavorable decision in Plaintiff's case on March 6, 2024. AR 17, 28.

The ALJ noted that Plaintiff's prior favorable disability decision had found that he suffered from a medically determinable impairment of epilepsy, and that this impairment had been determined to meet a listing impairment. AR 19. The ALJ then found that, since January 23, 2023, Plaintiff had the following medically determinable severe impairments: seizure disorder, neck strain, and compression fracture of the body of his thoracic vertebra. AR 19, 21. The ALJ found that these impairments did not meet or medically equal a listing impairment. AR 19. The ALJ also found that Plaintiff had experienced medical improvement in his epilepsy by January 23, 2023, and that this impairment no longer met a listing impairment. AR 20. The ALJ then determined that Plaintiff had the residual functional capacity to perform light work with certain additional physical limitations, including absence from work about one day every three months. AR 21. The ALJ found that this residual functional capacity allowed Plaintiff to perform past relevant work as a telephone representative. AR 27. Thus, the ALJ concluded that Plaintiff's disability had ended as of January 23, 2023. *Id.*

Plaintiff asserts the ALJ erred in three respects: (i) by erroneously analyzing medical opinions in his record; (ii) by failing to provide clear and convincing reasons to disregard Plaintiff's subjective symptoms statements; and (iii) by failing to provide germane reasons to disregard lay witness statements. Pl.'s Br. at 4-5 (Dkt. 13).

**A. The ALJ's Analysis of the Medical Opinions**

Plaintiff first challenges the ALJ's evaluation of the medical opinions in his record. Pl.'s Br. at 5 (Dkt. 13). Plaintiff argues the ALJ improperly analyzed these opinions, disregarded all relevant opinions, and failed to identify any opinion that supported his RFC. *Id.* at 5-10. Defendant responds that the ALJ's evaluation of the medical opinions adequately considered their supportability and consistency and thus complied with regulations and relevant law. Def.'s Br. at 2 (Dkt. 18). The Court agrees with Defendant that remand is unwarranted on this ground.

***1. Legal Standard***

Because this case was filed after March 27, 2017, the revised regulations governing the evaluation of medical evidence apply. *See* 20 C.F.R. § 404.1520c. Under these regulations, the ALJ is no longer required to give deference to any medical opinion, including treating source opinions. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022); *see also* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").

Instead, the ALJ evaluates the "persuasiveness" of the opinions based on several factors. *Id*. These are: (i) supportability, (ii) consistency, (iii) relationship with the claimant, (iv) specialization, and (v) any "other factors that tend to support or contradict a medical opinion."

20 C.F.R. §§ 416.920c(c)(1)-(5). The ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. §§ 404.1520c(a)-(b).

Supportability and consistency are the most important factors, and the ALJ, therefore, must explain how both factors were considered. *Woods*, 32 F.4th at 792; 20 C.F.R. § 416.920c(b)(2). The supportability factor looks inward at a medical opinion's bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). The consistency factor, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ is only required to articulate findings on the remaining factors (treatment relationship, specialization, and any other factors) where "two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. §§ 404.1520c(b)(2)-(3).

Courts review the ALJ's findings under these regulations using the substantial evidence standard. To be upheld, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

***2. Discussion***

The Court addresses, in turn, each of the medical opinions raised in Plaintiff's brief.

*a. Dr. Leslie Arnold and Dr. Robert Vestal*

Plaintiff first raises the opinions of state agency consultants Dr. Leslie Arnold and Dr. Robert Vestal. Dr. Arnold opined on January 20, 2023 that Plaintiff's record "could" show

medical improvement. AR 70. On March 16, 2023, Dr. Vestal concurred with Dr. Arnold's opinion. AR 79.

The ALJ found these opinions unpersuasive because they were both "inconsistent with the overall medical and non-medical evidence of record" and "not supported by observable signs and laboratory findings." AR 26. Although Plaintiff alleges that "[t]his reasoning falls short of an adequate supportability or consistency analysis," he "does not dispute that these opinions were unreliable." Pl.'s Br. at 6-7 (Dkt. 13). Defendant notes that Plaintiff does not dispute the ALJ's persuasiveness finding, and further asserts that any error here was harmless "because the ALJ included even greater limitations than [Dr. Arnold and Dr. Vestal] described in the residual functional capacity finding." Def.'s Br. at 3 (Dkt. 18); *see also* AR 26-27 (ALJ detailing additional exertional limitations incorporated into RFC).

Accordingly, because Plaintiff has conceded that he does not dispute the ALJ's ultimate persuasiveness finding as to Dr. Arnold and Dr. Vestal, and because the ALJ found RFC limitations beyond those proposed by Dr. Arnold and Dr. Vestal, the Court concludes that remand on is unwarranted here.

*b. Dr. Kurt Reintjes*

Plaintiff next raises the opinion of Dr. Kurt Reintjes. Dr. Reintjes conducted a consultative neurological examination of Plaintiff in January 2023. AR 379. Dr. Reintjes diagnosed him with "seizure disorder with episodic seizures that can be grand mal but with auras. These were subjectively reported." AR 380. Dr. Reintjes also noted Plaintiff's reported symptoms, his daily activities, and examination findings including "full range of motion," "intact dexterity," "completely intact" sensation (with the exception of the tip of his left thumb), and "normal" mental status. AR 379-80.

The ALJ found:

> Dr. Reintjes did not provide a function by function analysis of [Plaintiff's] abilities and limitations. However, the findings on physical examination appear to be consistent with the overall medical evidence of record. [Plaintiff's] reports of seizure activity were also consistent, as the medical records indicated that [Plaintiff] had fairly well controlled seizures medically. Therefore, the opinion of Dr. Reintjes is persuasive.

AR 24.

Plaintiff raises Dr. Reintjes's report only insofar as he argues that the ALJ "seemingly relied" on it to find he had experienced medical improvement. Pl.'s Br. at 7 (Dkt. 13). Plaintiff argues that Dr. Reintjes's report should have detailed the severity or frequency of Plaintiff's seizures, so as to show those seizures no longer met a listing. *Id.*

However, Plaintiff does not explain *how* the ALJ relied on the Dr. Reintjes's report to find medical improvement, nor does he cite any legal authority detailing the manner in which the ALJ was required to engage with Dr. Reintjes's report as he evaluated whether Plaintiff met or equaled a listing impairment or had experienced medical improvement. *Id.* Indeed, Plaintiff does not explicitly challenge the ALJ's medical improvement finding in his opening brief. Even so, the Court can find no reference or citation to Dr. Reintjes's report in the ALJ's medical improvement analysis. *See* AR 19-20.

Moreover, as Defendant notes, Dr. Reintjes's report was not a "medical opinion" with the meaning of Social Security Regulations at all, because (as the ALJ noted) it "did not provide a function by function analysis of [Plaintiff's] abilities and limitations." AR 24; *see also* 20 C.F.R. § 404.1513(a)(2) (defining a medical opinion as a statement about what a person can do despite their impairments). Defendant also notes that the ALJ was solely responsible for determining whether Plaintiff's impairment still met or equaled a listing impairment and whether he had

experienced medical improvement. Def.'s Br. at 5 (Dkt. 18) (citing SSR 17-2p). More generally, Defendant argues that the ALJ "rationally considered Dr. Reintjes's assessment" and separately "reasonably explained why Plaintiff's epilepsy did not meet or medically equal" a listing impairment. *Id.* at 5.

In his Reply, Plaintiff again appears to imply that Dr. Reintjes should have detailed his findings as to the frequency of Plaintiff's seizures more specifically. Reply at 3 (Dkt. 21). But again, the Court questions the connection Plaintiff sees between the ALJ's listing and medical improvement analyses and Dr. Reintjes's report. Put simply, Plaintiff has failed to tie this report to any requirement within Social Security law that would suggest the ALJ committed reversible legal error or failed to support his decision with substantial evidence. *Revels*, 874 F.3d at 654.

Because Plaintiff does not explain how the ALJ's step three analysis relied on Dr. Reintjes's report, the extent to which the ALJ was required to engage with that report, or otherwise how the ALJ erroneously analyzed Dr. Reintjes's report in light of Social Security Regulations, the Court finds Plaintiff has failed to show error on this issue warranting remand.

*c. Dr. Sergei Kashirny*

Plaintiff next raises the opinion of Dr. Sergei Kashirny, Plaintiff's treating neurologist. Dr. Kashirny rendered his opinion in January 2024. The opinion, in its entirety, states that "if patient is to have a seizure, he can have 1-2 days off per month. No driving, swimming, climbing ladders, baths for 3 months from most recent seizure." AR 592. Dr. Kashirny noted that his "diagnosis of temporal lobe epilepsy" supported this opinion. *Id.*

The ALJ noted that Dr. Kashirny's opinion was a "form document" that contained "very little information" – a single handwritten note on the final page of an otherwise blank document. AR 26. The ALJ then found the opinion partially unpersuasive:

> The opinion of Dr. Kashirny is not persuasive in so far that it suggests that the claimant would be off work 1 to 2 days per month. The opinion that the claimant should avoid certain activities for three months following his seizure was reasonable, and as noted above, I have included seizure limitations in the residual functional capacity, but the claimant does not appear to have the level of frequency or severity of seizures to result in the claimant missing work 1 to 2 days per month. The undersigned has included a limitation in the residual functional capacity that the claimant would be expected to be absent from work on and unscheduled basis about one day every three months. Therefore, the opinion is not persuasive.

*Id.*

Plaintiff argues that the ALJ erred by "failing to provide any comparison of Dr. Kashirny's opinion to the record or the [prior disability determination]." Pl.'s Br. at 7 (Dkt. 13). However, as Defendant explains, "there is no such requirement to compare any opinion to the [prior disability determination]." Def.'s Br. at 8 (Dkt. 18). Instead, the relevant regulations simply state that an ALJ must compare prior and current medical evidence to determine if medical improvement has occurred. 20 C.F.R. § 404.1594(c)(1); *see also Attmore v. Colvin*, 827 F.3d 872, 873 (9th Cir. 2016). Plaintiff fails to highlight any authority requiring the ALJ to individually analyze Dr. Kashirny's opinion to evaluate medical improvement. Moreover, as explained above with respect to Dr. Reintjes, Plaintiff does not explicitly challenge the ALJ's medical improvement analysis.

The ALJ otherwise properly analyzed the supportability and consistency of Dr. Kashirny's opinion. The ALJ reasonably explained that the opinion lacked supportability because it provided "very little information" and consisted only of a short note at the end of an otherwise blank form. AR 26. The ALJ also reasonably explained that the opinion was inconsistent because Plaintiff's record did not reflect "the level of frequency or severity of seizures to result in the claimant missing work 1 to 2 days per month." *Id.* Accordingly, the

ALJ's analysis of Dr. Kashirny's opinion is supported by substantial evidence, and remand on that basis is unwarranted here. *Woods*, 32 F.4th at 787.

*d. Dr. Ralph Heckard*

Lastly, Plaintiff raises the opinion of Dr. Ralph Heckard. Dr. Heckard completed a consultative neurological examination of Plaintiff in March 2019. He opined that Plaintiff had "no presenting mental status features that would significantly impair or preclude his ability to make reasonable workplace decisions and occupational adjustments." AR 368. Dr. Heckard noted that while Plaintiff "did display mild broadening of affect without displayed lability or irritability his mood is stable and he is cognitively intact and he does maintain attention and concentration throughout the course of the examination." *Id.* As to Plaintiff's seizures, Dr. Heckard noted that "when clinically active, [Plaintiff's seizure disorder] would episodically and transiently limit his ability to maintain uninterrupted attention, concentration, or persistence with personal or work-related activities. His seizures would pose a safety risk in the workplace." *Id.*

The ALJ found Dr. Heckard's opinion partially persuasive. AR 23. The ALJ noted that he had included seizure limitations in the RFC which were supported by Dr. Heckard's opinion. *Id.* However, the ALJ found that Dr. Heckard's "limitation for only transient limits in certain mental activities is vague and not supported by the overall medical evidence of record." *Id.*

Plaintiff argues that the ALJ "neither compared Dr. Heckard's opinion to the record for medical improvement nor identified which limitations in the RFC corresponded with the opinion." Pl.'s Br. at 10 (Dkt. 13). As with the above opinions, Plaintiff cites no support for his assertion that the ALJ was required to compare Dr. Heckard's opinion to the record when assessing his medical improvement. Nor does he cite support for the proposition that the ALJ was required to reference specific RFC limitations in his analysis of Dr. Heckard's opinion.

Indeed, looking to the whole decision, the ALJ specifically detailed these specific "seizure limitations" – including climbing, balance, bending, and hazard exposure limitations – in subsequent paragraphs. AR 27.

Plaintiff also asserts that the ALJ "had no need to evaluate the persuasiveness of an opinion in a prior decision." Pl.'s Br. at 10 (Dkt. 13). However, as Defendant notes, Social Security regulations require that an ALJ articulate persuasiveness findings as to all of the medical opinions in a claimant's record. 20 C.F.R. § 404.1520c(b). Plaintiff does not otherwise explain, or cite any legal authority, as to how the ALJ erred by articulating a persuasiveness finding as to Dr. Heckard's opinion. Pl.'s Br. at 10 (Dkt. 13); Reply at 5 (Dkt. 21). Accordingly, remand on this basis is unwarranted here.

In sum, the ALJ did not err in analyzing the medical opinions (and examination reports, in the case of Dr. Reintjes) within Plaintiff's record. Remand is unwarranted on this issue.

**B. The ALJ's Analysis of Plaintiff's Subjective Symptoms**

Plaintiff's second challenge is that the ALJ erred in analyzing Plaintiff's subjective symptom reports by failing to provide clear and convincing reasons for discounting them. Pl.'s Br. at 11-14 (Dkt. 13). Defendant responds that the ALJ's reasoning validly discounted Plaintiff's symptoms based on inconsistencies with the objective medical evidence and Plaintiff's reported daily activities. Def.'s Br. at 12-16 (Dkt. 18). The Court agrees with Defendant that remand is unwarranted on this ground.

***1. Legal Standard***

An ALJ must analyze a claimant's subjective symptoms in two steps. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could

reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if such objective medical evidence exists, and the ALJ has not determined that the claimant is malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id.* The reasons an ALJ provides for rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony . . .." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46).

An ALJ is best positioned to make credibility determinations, and their determinations are entitled to great weight. *Reddick*, 157 F.3d at 722. The ALJ may engage in ordinary techniques of credibility evaluation, including consideration of (i) the claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct; as well as (ii) the claimant's daily activities, the claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ may also consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken to alleviate those symptoms. *See* SSR 16-3p. Inadequate or inconsistent objective medical evidence may be used to discount a claimant's testimony. *Smartt*, 53 F.4th at 498. Similarly, daily activities that are inconsistent with a claimant's symptom allegations are valid grounds to discount that testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014).

***2. Discussion***

In formulating Plaintiff's RFC, the ALJ noted that he had considered Plaintiff's reported symptoms. AR 21. Plaintiff reported that his seizures caused him problems at work, hurt his back, and affected his memory. He reported that he did house tasks during the day, drove, socialized, and could walk about two miles. *Id.*

The ALJ then followed the two-step analysis outlined above. *Id.* At step one, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms. AR 22. However, at step two, the ALJ found that Plaintiff's statements "concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 22-23. The ALJ stated that "while there is some evidence to support [Plaintiff's] allegations, the objective evidence as well as the claimant's own activities and self-reports do not establish that he is as limited as alleged." AR 23.

The ALJ discussed Plaintiff's treatment history for seizure disorder and related neck and back problems over three pages. AR 23-26. With respect to Plaintiff's reports that he suffered memory issues due to his seizures, the ALJ noted that Plaintiff "underwent a neurological examination and a physical examination and has had mental status examinations performed by his treatment providers, and none of those records indicated any difficulty on presentation with respect to the claimant's memory." AR 22.

The ALJ concluded:

> The minimal objective findings and conservative treatment measures as well as the claimant's ability to work are indicative of his ability to perform work at the light exertional level with additional postural, environmental, seizure, and absentee limitations as provided in the residual functional capacity above. The claimant has been recommended for cervical spine surgery and that is still in progress. However, the claimant reported that he

> is still capable of performing activities of daily living and he spends time daily at home doing such activities. The claimant appears to still be active running errands while driving, despite his seizure history. This suggests that the claimant is more capable than alleged and that he has fewer seizure activities than alleged.

AR 26.

Plaintiff argues that the ALJ erred by summarizing Plaintiff's medical record without explaining how it contradicted Plaintiff's allegations. Pl.'s Br. at 12 (Dkt. 13). The Court disagrees, because a reasonable mind can follow the conclusions the ALJ drew from the medical evidence. The medical records highlighted by the ALJ reasonably contradicted the severity of Plaintiff's alleged symptoms. For example, the ALJ noted that Plaintiff had "no definitive seizure episodes in the last 10 months with the exception of a few brief oral spells with preserved consciousness." AR 24. Similarly, the ALJ noted that Plaintiff "reported [in January 2023] medication compliance and he was doing acceptably well with seizure control." *Id.* The ALJ also highlighted medical records in which Plaintiff reported "no issues" and x-rays returned normal findings. AR 25-26. The ALJ concluded that these "minimal objective findings and conservative treatment measures" were "indicative of his ability to perform work at the light exertional level with additional . . . limitations as provided in the residual functional capacity above." AR 26. Thus, the ALJ validly considered medical evidence that contradicted the severity of Plaintiff's alleged symptoms, *Smartt*, 53 F.4th at 498, and sufficiently explained that these records contradicted Plaintiff's allegations that the symptoms impacted his ability to work.

Plaintiff also argues the ALJ's analysis of his medical records failed to analyze the severity of his seizure complaints. Pl.'s Br. at 14 (Dkt. 13). However, the immediately preceding discussion shows the ALJ adequately considered records of Plaintiff's seizures. AR 24 (Plaintiff had "no definitive seizure episodes within the last 10 months" and "was doing

acceptably well with seizure control"). Thus, contrary to Plaintiff's assertion, the "minimal objective findings and conservative treatment records" the ALJ referenced as indicative of Plaintiff's ability to do light work included records which the ALJ found undercut the severity of Plaintiff's seizures.

Plaintiff also argues that the ALJ was not sufficiently specific in his discussion of his daily activities because the ALJ made no "specific findings" as to how these activities impacted his credibility or work skills. Pl.'s Br. at 14 (Dkt. 13). The Court again disagrees, because the ALJ explicitly found that Plaintiff's daily activities, including his "ability to work" and "time daily at home doing such activities [of daily living] . . . suggests that [Plaintiff is more capable than alleged and that he has fewer seizure activities than alleged." AR 26. The ALJ thus specifically found that Plaintiff's daily activities contradicted his testimony, and therefore, complied with the Ninth Circuit caselaw. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

In sum, the ALJ did not err in analyzing Plaintiff's subjective symptoms. The ALJ validly considered Plaintiff's medical records and activities of daily living to discount the severity of Plaintiff's alleged symptoms, and supported his analysis with respect to both of those portions of the record with sufficiently specific reasoning. *Brown-Hunter*, 806 F.3d at 493. Although the Court might evaluate Plaintiff's symptoms differently on its own first impression, on review it asks only if the ALJ provided clear and convincing reasons to discount Plaintiff's symptoms. *Lingenfelter*, 504 F.3d at 1036. Because the ALJ here did so, remand is unwarranted on this ground.

**C. The ALJ's Analysis of Lay Witness Statements**

Plaintiff's final challenge is that the ALJ improperly rejected the lay witness statements of Plaintiff's parents without providing germane reasons for doing so. Pl.'s Br. at 14-16 (Dkt.

13). Defendant responds that the ALJ was not required to provide germane reasons to reject these lay witness statements, as the revised regulations applicable to Plaintiff's claim are not governed by the "germane reasons" standard. Def.'s Br. at 16-17 (Dkt. 18).

***1. Legal Standard***

The Ninth Circuit has not yet resolved whether an ALJ must provide "germane reasons" before rejecting lay statements under the new regulations.[1] *Apple v. Bisignano*, No. 24-307, 2025 WL 1525314, at *3 (9th Cir. May 29, 2025); *Stephens v. Kijakazi*, No. 22-25998, 2023 U.S. App. LEXIS 27936, 2023 WL 6937296, at *2 (9th Cir. Oct. 20, 2023); and *Fryer v. Kijakazi*, No. 21-36004, 2022 U.S. App. LEXIS 35651, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022).

Under the previous "germane reasons" standard, as long as the ALJ gives legally sufficient reasons for rejecting a plaintiff's testimony, "the ALJ need only point to those reasons when rejecting similar testimony by a [lay] witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). An ALJ who provides clear and convincing reasons for rejecting a claimant's subjective complaints may legally reject parallel statements by a lay witness for "the same reasons." *Valentine v. Comm'r SSA*, 574 F.3d 685, 694 (9th Cir. 2009).

***2. Discussion***

[1] On March 7, 2025, the Ninth Circuit issued a published ruling, holding that its "'germane reasons' precedent no longer applies to claims filed on or after March 27, 2017, and in considering such claims, ALJs need not explain their reasons for discounting evidence from nonmedical sources, such as the claimant's friends and family." *Hudnall v. Dudek*, 130 F.4th 668, 671 (9th Cir. 2025). However, on April 7, 2025, this opinion was vacated and withdrawn. *Hudnall v. Dudek*, No. 23-3727, 2025 WL 1024393, at *1 (9th Cir. Apr. 7, 2025).

Plaintiff's record contained statements from two lay witnesses: Plaintiff's mother and father. AR 22. The ALJ discussed these lay witness statements alongside his consideration of Plaintiff's reported symptoms. AR 21-22.

Plaintiff's mother provided a letter and questionnaire as to his seizure symptoms. These stated that Plaintiff experienced 3 to 4 seizures weekly, and that these seizures caused him pain, confusion, and negative repercussions at work. AR 22. Plaintiff's father wrote a similar letter, which stated that Plaintiff had experienced numerous grand mal seizures, and that Plaintiff had taken medication for his seizure episodes but had eventually stopped working after those episodes persisted. *Id.*

Plaintiff's parents also submitted a journal which logged Plaintiff's seizures, symptoms, and treatment. *Id.* The ALJ stated that the journal reflected that Plaintiff suffered seizures at night, was disoriented when interacting with his roommates, and was in pain. The ALJ also stated that "[s]everal entries indicated physical pain complaints related to seizure activity, including neck stiffness and pain, shoulder pain, and back pain." *Id.*

As discussed above, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 22. However, the ALJ found that Plaintiff's statements about the limiting effects of these symptoms were "not entirely consistent with the medical evidence and other evidence in the record, *including third-party statements, which I have considered*." AR 23 (emphasis added). In particular, the ALJ's subjective symptom analysis highlighted his minimal objective findings, conservative treatment measures, and ability to work. AR 26. The ALJ also noted that Plaintiff performed activities of daily living, such as running errands, and that these showed he was "more capable than alleged and that he has fewer seizure activities than alleged." *Id.*

Even assuming *arguendo* that the "germane reasons" standard applies under the revised regulations, the ALJ's lay witness analysis was sufficient. As discussed above, the ALJ provided legally sufficient reasons to reject Plaintiff's subjective symptom testimony. The ALJ summarized these symptoms alongside the third-party reports of Plaintiff's parents, which generally paralleled Plaintiff's own reported symptoms. AR 21-22. The ALJ then followed this summary by explaining why he discounted these reports. AR 23. Further, he explicitly noted that he had considered third party statements. *Id.*. A reasonable mind can easily conclude that the ALJ's subjective symptom analysis applied equally to both Plaintiff's own statements and the statements of his parents. Thus, the ALJ rejected these parallel statements of his parents for the same reasons as Plaintiff's own statements. *Valentine*, 574 F.3d at 694. Remand is unwarranted here.

## III. ORDER

Based on the foregoing, IT IS HEREBY ORDERED that the decision of the Commissioner is AFFIRMED, that Plaintiff's Complaint for Review of a Social Security (Dkt. 1) is DENIED, and this action is DISMISSED in its entirety, with prejudice.

DATED: August 28, 2026

Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge